IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EVELYN MELENDEZ, et al

    **Plaintiff(s)**

v.

DR. RICARDO BRAU RAMIREZ, et al

    **Defendant(s)**

CIVIL NO. 97-2128 (JAG)



RECEIVED & FILED
MAR 28 2002
OFFICE-CLERK, U.S. DIST. CT.
SAN JUAN, PR

---

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Plaintiffs Miguel Melendez-Melendez,[1] Evelyn Melendez, Miguel Melendez, Jr., and Nydia Torres (collectively, "plaintiffs") sued defendants Ricardo Brau-Ramirez, his conjugal partnership with his wife, and SIMED (collectively, "defendants") for negligence under Puerto Rico state law. Plaintiffs contend that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal diversity statute. Defendants have filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Docket No. 88.) For the reasons stated below, the

---

[1] Melendez-Melendez was the original – and only – plaintiff in the case. Upon his death in April, 2000, his children Evelyn and Miguel Jr., as well as his first wife, Nydia Torres, inherited his claim and were substituted as plaintiffs. (Docket No. 46.)




Civil No. 97-2128(JAG)                                                2

Court grants defendants' motion and dismisses the Complaint for want of subject matter jurisdiction.

### FACTUAL BACKGROUND

On December 16, 1989, Melendez-Melendez was the victim of a violent physical attack in Camden, New Jersey.[2] The assailants beat Melendez-Melendez with a bat, injuring his head, his right eye, and other parts of his body. At the time, Melendez-Melendez lived in New Jersey with his wife Maria Batista. Melendez-Melendez's former wife (Nydia Torres) and his children (Miguel Jr. and Evelyn) lived in New Jersey as well.[3]

Shortly after the attack, Melendez-Melendez underwent eye surgery in Philadelphia. His discomfort and pain (particularly in his right eye) did not diminish, however. Melendez-Melendez became extremely sensitive to cold weather, and any significant exposure

---

[2] Plaintiffs complain that defendants did not submit a "Statement of Uncontested Material Facts," which this Court's Local Rule 311.12 requires when a party files a motion for summary judgment. Defendants, however, have not filed a motion for summary judgment. Rather, they have filed a motion, pursuant to Fed. R. Civ. P. 12(b)(1), seeking dismissal for lack of subject matter jurisdiction. No statement under Local Rule 311.12 is required in those circumstances.

[3] Defendants do not contest that all plaintiffs (other than Melendez-Melendez) were residents of New Jersey when the action was filed.

AO 72A
(Rev. 8/82)

Civil No. 97-2128(JAG)                                                    3

greatly increased his pain. Therefore, during the winter of 1990-91, Melendez-Melendez and Batista traveled to Puerto Rico, hoping that the climate change would ameliorate Melendez-Melendez's pain. The couple stayed with Melendez-Melendez's relatives in Orocovis, Puerto Rico, both during their 1990-91 visit and during subsequent visits in 1991.

In late 1991, Melendez-Melendez and Batista decided to sell their New Jersey house and moved to Puerto Rico. They were hopeful that the weather change would measurably improve Melendez-Melendez's condition. In September, 1991, at Melendez-Melendez's suggestion, Melendez-Melendez and Batista purchased a house in Bayamon, Puerto Rico. They would travel back to New Jersey frequently to visit their respective families.

In November 1991, Melendez-Melendez saw Dr. Maria Robles, a Puerto Rico-based optometrist, and sought her advice on his eye condition. Dr. Robles referred Melendez-Melendez to Dr. Piovanetti, an ophthalmologist, who in turn referred him to defendant Brau, a neurosurgeon, in December, 1991. In 1992 and 1993, Brau performed three surgeries on Melendez-Melendez to

Civil No. 97-2128(JAG)                                                          4

alleviate the pain in his right eye.[4] The operations, however, did not bring about the expected change. Instead of noticing an improvement in his condition, Melendez-Melendez felt the pain in his right eye spread to his head and face. The pain became so intolerable that in 1994, Melendez-Melendez decided to have a fourth operation - to remove his right eye altogether. He had hoped that the procedure would finally decrease his pain, but, again, the surgery did not achieve the desired results. His condition continued to deteriorate.

In 1994, Melendez-Melendez and Batista sold their house in Bayamon and purchased a house in Orocovis, Puerto Rico. They lived together in the Orocovis house until December, 1995, when they separated, and Batista decided to return to the mainland. Melendez-Melendez, however, remained in Puerto Rico. They continued to own the Orocovis house until 1999. Melendez-Melendez did not purchase any real estate in New Jersey for the remainder of his life.

The parties disagree as to what Melendez-Melendez did and where he lived between 1995 and 1998. Plaintiffs contend that

---

[4] The surgery dates were August 10, 1992, August 18, 1992, and April 20, 1993.

Civil No. 97-2128(JAG)                                                5

Melendez-Melendez moved in with his parents (who lived in Orocovis) as early as 1995, and thereafter moved back to Camden in mid-1995 to live with his son Miguel Jr., traveling to Puerto Rico only during the winters. According to Miguel Jr., Melendez-Melendez commuted between New Jersey and Puerto Rico so much that it seemed "like he was catching a bus."[5] Defendants contend that Melendez-Melendez remained a Puerto Rico resident until his daughter Evelyn took him back to New Jersey in September, 1998. Both parties agree that Melendez-Melendez's physical and mental condition deteriorated steadily during the 1990s due to his heavy intake of pain medication and, increasingly, alcohol.

Melendez-Melendez's children lost contact with their father sometime in 1997, when Melendez-Melendez last traveled to Puerto

---

[5] The plaintiffs's depositions show conflicting testimony regarding the extent and duration of Melendez-Melendez's visits to New Jersey following his operations. Evelyn Melendez testified that his father traveled to and from New Jersey frequently until "the second operation," but that he stopped doing so after that. Melendez-Melendez's second operation, however, took place in 1993 (his last one was in 1994). She further testified that her father never came back to New Jersey on his own after the second operation, but Miguel Jr.'s testimony, is that Melendez-Melendez traveled to New Jersey on his own throughout the mid-1990s. Specifically as to 1997, the year in which plaintiffs filed suit, Evelyn testified that she only spoke to her father on the phone during that year, which would seem odd if, as plaintiffs contend, Melendez-Melendez spent a substantial amount of time in New Jersey.

Rico (presumably to escape New Jersey's cold weather). They did not hear from him in early 1998, and thereafter became increasingly concerned about his condition. Their telephone exchanges with their father had shown him unable to carry even a simple conversation. Eventually, Miguel, Jr. And Evelyn became alarmed. In September 1998, Evelyn decided to travel to Puerto Rico. She found Melendez-Melendez in Orocovis, in a highly deteriorated state, barely able to care for himself. She decided to bring him back to New Jersey with her. Melendez-Melendez stayed at Miguel Jr.'s house for the remainder of 1998 and throughout 1999. Melendez-Melendez's condition did not improve, and he died in April, 2000.

## DISCUSSION

As courts of limited jurisdiction, federal courts have the duty of construing jurisdiction-granting statutes strictly. See, e.g., Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998). Here, plaintiffs have invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. See Casas Office Machines v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir. 1994). Defendants have

challenged the plaintiffs's jurisdictional allegations; accordingly, plaintiffs bear the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. Bank One v. Montle, 964 F.2d 48, 50 (1st Cir. 1992); O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982).

"For federal jurisdictional purposes, diversity of citizenship must be established as of the time of suit." Valentin v. Hospital Bella Vista, 254 F.3d 358, 361 (1st Cir. 2001)(citing Bank One, 964 F.2d at 49). Accordingly, the critical date here is July 21, 1997, the date on which Melendez-Melendez filed his complaint. Plaintiffs's jurisdictional argument hinges on their contention that Melendez-Melendez was a resident of New Jersey for diversity purposes when he filed suit. Defendants contend that, on that date, Melendez-Melendez was domiciled in Puerto Rico.

For purposes of diversity jurisdiction, citizenship usually is equated with domicile. Valentin, 254 F.3d at 366. A person is a citizen of the state in which he is domiciled. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely. Valentin, 254 F.3d at 366. A person's domicile is the "place where

Civil No. 97-2128(JAG)                                                    8

he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Id. (citing Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988)). It is not required that the intention be to stay there permanently, however. A plaintiff maintains his domicile until it can be proven, by clear and convincing evidence, that he has changed it. Id.

While a party may have more than one residence, he has only one domicile. See Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979). To ascertain a person's domicile (particularly if there is evidence that a party's domicile is unclear), the Court must focus on the party's intent. Palermo v. Abrams, 62 F. Supp. 2d 408, 410 (D.P.R. 1999). The analysis calls for a "totality of the evidence" approach, and no single factor is conclusive. Id. Courts must make these determinations on a case-by-case basis. Id.

Some of the factors traditionally considered when determining a party's domicile are: (1) the person's place of voting; (2) the location of the person's real and personal property; (3) the state issuing the person's driver's license; (4) the state where the person's bank accounts are maintained; (5) club or church

Civil No. 97-2128(JAG)                                                    9

membership; (6) the person's place of employment. <u>Palermo</u>, 62 F. Supp. 2d at 410 (<u>citing</u> <u>Bank One</u>, 964 F.2d at 50). The determination of domicile is a mixed question of law and fact. <u>Id.</u>

The gravamen of plaintiffs's argument is that Melendez-Melendez was always domiciled in New Jersey, and never lost his domicile, despite his move to Puerto Rico in 1991. They contend that "his move to Puerto Rico was only temporary," intended only to afford Melendez-Melendez an opportunity to escape the harsh New Jersey winter. (Docket No. 93 at 3.) They further contend that Melendez-Melendez never intended to stay in Puerto Rico permanently, and that his stay in Puerto Rico was lengthened only as a result of the allegedly botched operations. Plaintiffs, however, provide no legal support for the proposition that moving to another state indefinitely for health reasons, as Melendez-Melendez did here, does not change that person's domicile for diversity purposes. "It has long been the rule that motive for the change in residence is irrelevant in determining domicile." <u>Bank One</u>, 964 F.2d at 53; <u>see also</u> <u>Hawes</u>, 598 F. 2d at 702 ("Although the move was not one they desired, they made a deliberate decision to go to New York City [for health reasons] for an indefinite period of time.")

Civil No. 97-2128(JAG)                                                      10

It is undisputed that Melendez-Melendez and his former wife Batista moved to Puerto Rico for health reasons. Their move to Puerto Rico, however, *was* made deliberately and with the intent of remaining in Puerto Rico for an indefinite period of time, as evidenced by the 1991 and 1994 real estate purchases. To be sure, his desire was that the weather would improve his condition, and later, that the surgeries would. Unfortunately, that did not happen. Still, Melendez-Melendez had the option to return to New Jersey after his 1994 eye surgery (or, alternatively, in 1995, following his separation from Batista), sell his Puerto Rico property, and re-establish himself in New Jersey. Instead, he chose to keep his house in Puerto Rico, travel to New Jersey, and stay with relatives there - as opposed to the pre-1991 period, where he had a house in New Jersey, traveled to Puerto Rico, and stayed with relatives there.

The Court finds that defendants have established, by clear and convincing evidence, that Melendez-Melendez changed his domicile from New Jersey to Puerto Rico in 1991, and that he remained a Puerto Rico domiciliary thereafter. Since the presumption is that domicile remains the same until proven otherwise by clear and convincing evidence, see Bank One, 964 F.2d at 50, and since

Civil No. 97-2128(JAG)                                                    11

plaintiffs argue (in the alternative) that Melendez-Melendez changed his domicile back to New Jersey, the Court will consider whether Melendez-Melendez changed his domicile back to New Jersey on or before July 21, 1997, the date in which plaintiffs filed suit.

A review of the record shows that, between December, 1995 and July, 1997, Melendez-Melendez continued to own – and, for the most part, live in – his property in Puerto Rico. It appears that he traveled to New Jersey and spent a significant amount of time there during these years. Various factors, however, indicate to the Court that he lacked the intent to change his domicile back to New Jersey. Most notably, Melendez-Melendez always stayed at his son's house, not in a house of his own. Instead, he always returned, and stayed in, his Puerto Rico home. Moreover, Melendez-Melendez did not keep a New Jersey address of his own, but rather used his ex-wife's address for his personal mail. His course of conduct does not show an intent to change his domicile to New Jersey.

Plaintiffs have not produced competent evidence that Melendez-Melendez held a New Jersey voting card, or a valid driver's license, or that any of the other factors used when ascertaining domicile would establish the citizenship of Melendez for diversity

purposes when the complaint was filed. Indeed, given Melendez-Melendez's fragile condition, most of the factors commonly analyzed when determining domicile - voting card, licenses, club memberships, tax statements - are inapplicable here. As a result, the one factor that does apply (location of property) becomes relatively important. In this case, that factor points strongly to Puerto Rico as the place of domicile. Melendez-Melendez never bought property in New Jersey after selling his residence and moving to Puerto Rico in 1991; by contrast, he bought two homes in Puerto Rico, kept his Puerto Rico house even after his separation from Batista, and continued to live there until September, 1998.

Melendez-Melendez's back-and-forth trips to New Jersey during 1996 and 1997 did not evidence an interest in remaining domiciled there. Even though he had family in New Jersey and in Puerto Rico with whom he could have stayed, Melendez-Melendez decided to retain his Puerto Rico home and stay with his son whenever he traveled to New Jersey. Plaintiffs do not provide other indicia pointing to Melendez-Melendez's intent to change his domicile back to New Jersey. Accordingly, the Court concludes that his trips to New Jersey do not suffice to effect a domicile change.

Civil No. 97-2128(JAG)                                                      13

The defendants have established that Melendez-Melendez changed his domicile to Puerto Rico in 1991, and plaintiffs have failed to establish that his domicile changed back to New Jersey before July 21, 1997. On these facts, the Court is unable to say that, on the date in question, Miguel Melendez-Melendez was domiciled in New Jersey. Plaintiffs have therefore not overcome the presumption, by clear and convincing evidence, that Melendez-Melendez continued to be domiciled in Puerto Rico until proven otherwise by clear and convincing evidence.

"[W]ithout a preponderance of evidence establishing diversity the district court [lacks] judicial power to adjudicate this controversy under § 1332(a)(1)." <u>Francis v. Goodman</u>, 81 F.3d 5, 6 (1st Cir. 1996). The Court concludes that Melendez-Melendez was domiciled in Puerto Rico when the plaintiffs filed their suit. Because the defendants are also domiciled in Puerto Rico, the Court lacks diversity jurisdiction over this action. Plaintiffs may not sue in federal court.

## CONCLUSION

For the foregoing reasons, the Court grants defendants's motion and dismisses the Complaint for lack of subject matter jurisdiction. Judgment shall enter accordingly.

Civil No. 97-2128(JAG)                                                                 14

IT IS SO ORDERED.

San Juan, Puerto Rico, this 28th day of March 2002.

_____
JAY A. GARCIA GREGORY
United States District Judge